UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KRISTI MERRIMAN, individually and as next, of friend of MITCHEL NELSON, a minor child, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:20-CV-106-HBG |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 14].

Now before the Court is Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment [Doc. 26]. Plaintiffs have responded in opposition [Doc. 27], and Defendant has replied [Doc. 30]. The Motion is ripe for adjudication. Accordingly, for the reasons more fully explained below, the Court finds Defendant's Motion [**Doc. 26**] well taken, and the same will be **GRANTED**.

**I.   BACKGROUND**

This case arises out of an alleged breach of contract of a homeowner's insurance policy. [Doc. 12 at ¶ 37]. In their Amended Complaint, Plaintiffs have also alleged personal and mental injuries, stating that Defendant failed to repair a roof that resulted in mold growing in Plaintiffs' home. [*Id.* at ¶ 38]. In addition, Plaintiffs have alleged statutory and common law bad faith claims and violations of the Tennessee Consumer Protection Act ("TCPA"). [*Id.* at ¶¶ 39-41].

1

The following facts are undisputed, unless otherwise noted. Plaintiff Merriman is the owner of real property, including a home, located in Knoxville, Tennessee ("Property"). Plaintiff Nelson is Plaintiff Merriman's minor son who also resides at the Property. [Doc. 27 at 1]. Plaintiff Merriman obtained a homeowner's insurance policy ("Policy") on the Property with Defendant. [*Id.* at 1]. On February 21, 2015, Plaintiff Merriman reported a loss ("2015 Claim"). [Doc. 26-2]. According to the claim paperwork, Plaintiff Merriman reported water coming into the Property. [*Id.*]. Specifically, the claim paperwork states, "Insured not sure how water is coming in hom [sic], could be pipe burst or ice dam since the snow how [sic] been melting. Insured thinks is [sic[ more of possible ice dam." [*Id.*]. Plaintiff Merriman disputes that she specifically reported that the issue was an ice dam. [Doc. 29 at ¶ 1].

After Plaintiff Merriman reported the loss to Defendant, Servpro began mitigating the damage to her house. [Doc. 27 at 2]. Servpro tore out certain water-damaged construction material and dried out the affected rooms with air movers and dehumidifiers. [*Id.*]. The total charge for the mitigation work was $2,123.15. [*Id.*]. Plaintiff Merriman also hired Smokey Mountain Construction Company to remove the remaining ice from her gutters to prevent any further damage to her home, which costed $100.00. [*Id.*]. On March 18, 2015, Defendant issued a check to Plaintiff Merriman in the amount of $2,223.15, which constituted the charges submitted by Servpro and Smokey Mountain Construction Company. [*Id.*].

In the meantime, Defendant assigned Guy Epley ("Epley") to adjust the loss, and on February 27, 2015, Epley inspected Plaintiff Merriman's house. [*Id*. at 2]. Epley's inspection revealed damage from an ice dam causing water to drain from the upstairs bedroom through the garage and down to the basement. [*Id.*]. According to Plaintiff Merriman, during Epley's inspection, she asked Epley what was causing the water intrusion, and Epley stated that the gutters

on her home had pulled away due to the weight of the ice but that the gutters would go back to their original position and self-correct once the ice in the gutters was gone. [Doc. 29 at 4]. Plaintiff Merriman asked Epley if there should be a roof repair included in the estimate, and he told her that the roof did not need to be repaired because the cause of damage was an ice dam. [*Id.* at 5]. Plaintiff Merriman states that Epley never went on the roof to inspect it. [*Id.*]. In addition, Plaintiff Merriman states that Epley made sexual advances towards her, which she declined, making Epley angry. [*Id.* at 4]. Plaintiff Merriman believes that Epley created a low estimate for the 2015 storm damage to the Property in retaliation of Plaintiff Merriman's refusal to yield to Epley's sexual advancements. [*Id.* at 5]. Plaintiff Merriman complained to Defendant about Epley's behavior, and Defendant assigned a new adjuster, Michael Tardy, to her claim. [Doc. 27 at 2].

The parties went back and forth regarding the estimate for repairing the damage, but in any event, Defendant paid Plaintiff Merriman approximately $11,703.00 for the damage that occurred on February 21, 2015. [*Id.* at 3]. The parties agree that by June 2015, Defendant had resolved the 2015 Claim. [*Id.*].

According to Plaintiff Merriman, in August 2018, she was organizing her home, when she opened a closet in her master bedroom and immediately noticed an overwhelming mildew smell. [Doc. 29 at 5]. Plaintiff Merriman claims that there was similar mold growth in other parts of her home as well. [*Id.* at 6]. Plaintiff Merriman states, "Unbeknownst to [her,] water intrusion from the 2015 storm had been ongoing, causing mold and mildew to grow in her home since on or about February 21, 2015." [*Id.*].

In August 2018, Defendant sent Rainbow International Roofing ("Rainbow Roofing") to Plaintiff Merriman's home to perform an inspection. [Doc. 27 at 4]. The inspection revealed the presence of mold and a slow drip coming from the roof. [*Id.*]. Plaintiff Merriman claims that

3

Rainbow Roofing never performed a roof inspection and that she personally contacted a roofing company, Tri-Star, to come to the Property to repair the roof. [Doc. 29 at 6].

On October 3, 2018, Defendant issued a check to Plaintiff Merriman amounting to $877.59, which constituted $242.14 for damage to her luggage and $635.45 for a mold test. [Doc. 27 at 4]. On November 1, 2018, Earl Watkins ("Watkins"), Defendant's claims adjuster, inspected the Property and wrote an estimate for repairs. [*Id.*]. Watkins communicated with Stephen King ("King") at Ethos Restoration, who Plaintiff Merriman had hired to perform her repairs—and King agreed to perform the work for the estimate that Watkins provided to Defendant. [*Id.*].

According to Watkins, on November 14, 2018, he and Plaintiff Merriman discussed over the telephone and through email correspondence that Ethos Restoration had agreed to Defendant's estimate. [*Id.*]. Plaintiff Merriman does not recall ever having a conversation with Watkins concerning Ethos Restoration's agreement to make the repairs for the amount reflected in Defendant's estimate. [Doc. 29 at 3]. On November 14, 2018, Defendant issued a check to Plaintiff Merriman, amounting to $14,823.99, which constituted $12,977.14 for the total repair amount and $1,846.85 for the mold. [Doc. 27 at 4].

Plaintiff Merriman did not cash the check that Defendant issued on November 14, 2018. [*Id.*]. Plaintiff Merriman claims that the check does not include payment for the roof repair performed by Tri Star that Plaintiff Merriman personally paid. [Doc. 29 at 3].[1] Plaintiff Merriman states that she did not trust Defendant because at one point, Defendant issued a check as though Defendant was going to cover her claim and later sent her a letter stating that Defendant would not cover the claim. [*Id.*]. Plaintiff Merriman states that she did not cash Defendant's check issued

---

[1] In Plaintiffs' discovery responses, they specify that Plaintiff Merriman paid $1,300 for the roof repair. [Doc. 29-1].

4

for the mold remediation because she did not believe that it would cover the cost to restore her home properly. [*Id.* at 3]. Plaintiff Merriman states that she has not remediated the mold at this point because she cannot afford the cost and does not know if mold is elsewhere in the home because the air quality tests were only conducted in two rooms. [*Id.* at 6]. Plaintiffs state that as a result of the 2015 water intrusion, they experienced health issues. [*Id.*]. Plaintiffs further assert that they are unable to live in the upstairs of their home. [*Id.*].

## II. POSITIONS OF THE PARTIES

Defendant requests [Doc. 26] summary judgment in its favor. For grounds, Defendant states that Plaintiffs' breach of contract and bad faith claims are subject to the same theory—that Defendant failed to properly investigate and adjust the claim. Defendant argues that it did not have an obligation to find the alleged roof damage when Plaintiff Merriman first reported her claim in February 2015 pursuant to the terms of the Policy. In addition, Defendant argues that it provided coverage.

In the alternative to summary judgment, Defendant seeks partial summary judgment on Plaintiffs' bad faith claims and the TCPA claim. Defendant argues that Plaintiffs cannot show bad faith because Defendant made payments with regard to the ice storm damage. In addition, Defendant states that Plaintiffs cannot recover under a common law bad faith claim because the exclusive remedy is statutory. Further, Defendant argues that Plaintiffs' TCPA claim should be dismissed because they are unable to demonstrate that Defendant deceived Plaintiffs or acted deceptively or unfairly in its handling of the claim. Finally, Defendant contends that it is entitled to summary judgment on its affirmative defense that Plaintiffs failed to mitigate their damages.

Plaintiffs respond [Doc. 29] that Defendant's Motion should be denied. Plaintiffs argue that Plaintiff Merriman declined Epley's sexual advances causing him to become angry, and he

5

retaliated by not diligently inspecting Plaintiff Merriman's home in order to determine the true extent of the damages and the source thereof. Plaintiffs argue that there are disputed facts that show Defendant breached its implied duty to act in good faith and that Defendant breached the Policy when it failed to investigate, adjust, and repair all damage relating to the 2015 Claim. Plaintiffs disagree with Defendant's position that Defendant has no duty to inspect a home. Plaintiffs add that Defendant had a duty of good faith and that Defendant breached its duty by not exercising ordinary care and diligence in investigating Plaintiff Merriman's 2015 Claim. Further, Plaintiffs contends that they are permitted to allege a common law bad faith claim, in addition to a statutory bad faith claim. Plaintiffs argue that here, there are disputed material facts as to whether bad faith penalties applicable. Finally, Plaintiffs assert that there are disputed facts regarding the mitigation of damages and that Plaintiff Merriman acted reasonable under the circumstances in this case.

Defendant replies [Doc. 30] that an implied covenant of good faith and fair dealing is not a stand-alone claim. Defendant claims that Plaintiffs have not pointed to any provision in the Policy that it breached, and Defendant maintains that it has no duty to find and repair damage to Plaintiffs' Property. Defendant asserts that because it did not breach the Policy, Plaintiffs' good faith and fair dealing claim also fails. Further, Defendant argues that Tennessee does not recognize a claim for violating the TCPA when the claim is connected to an insurance contract and that Plaintiffs cannot maintain a common law tort of bad faith. In addition, Defendant argues that it is not liable for statutory bad faith because it did not refuse to pay the claim.

### III. STANDARD OF REVIEW

Defendant has moved for summary judgement pursuant to Federal Rule of Civil Procedure 56. Summary judgment under Rule 56 is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson*, 477 U.S. at 250.

## IV. ANALYSIS

The Court has considered the parties' arguments summarized above, and for the reasons more fully explained below, the Court finds Defendant's Motion [**Doc. 26**] well taken, and it is **GRANTED**. As mentioned above, Plaintiffs have asserted the following claims in this case: breach of contract, common law and statutory bad faith, and violations of the TCPA. The Court will first address the breach of contract claim.

Plaintiffs' breach of contract claim stems from their allegation that Defendant failed to diligently investigate, adjust, and repair all damage related to the 2015 Claim. Plaintiffs state that Defendant's alleged failure to diligently investigate constitutes a breach of its duty to act in good faith under the Policy and prevented Plaintiffs from receiving the full benefits under the Policy. In addition, Plaintiffs state that Plaintiff Merriman personally paid for the repair to the roof.

To establish a breach of contract claim in Tennessee, a plaintiff must establish as follows: (1) existence of a valid and enforceable contract, (2) a deficiency in the performance amounting to a breach, and (3) damages caused by the breach. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). "In Tennessee, 'courts construe insurance contracts in the same manner as any other contract.'" *Clark v. Affinion Grp.,* No. 16-02141, 2016 WL 8738239, at *5 (W.D. Tenn. Dec. 30, 2016) (quoting *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000)). Thus, contractual terms are given their plain and ordinary meaning. *Id.*

"A duty of good faith and fair dealing is implied in the performance and enforcement of every contract." *Kinard v. Nationstar Mortg. LLC*, 572 S.W.3d 197, 207 (Tenn. Ct. App. 2018). The implied covenant "honors the reasonable expectations of the contracting parties" and "protects

the rights of the parties to receive the benefits of the agreement into which they entered." *Id.* It is well established, "[A] claim based on the implied covenant of good faith is not a stand-alone claim; it is part of an overall breach of contract claim." *Cadence Bank, N.A. v. The Alpha Tr.,* 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) (quoting *Jones v. LeMoyne–Owen College,* 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009)) (other citations omitted).

With respect to Plaintiffs' breach of contract claim, the parties' arguments focus on the second element—that is, a deficiency in the performance of the Policy. As stated above, Defendant argues that Plaintiffs have not identified a specific provision of the Policy that it violated. In addition, Defendant argues that it paid Plaintiffs' claims. Plaintiffs maintain that Defendant had a duty to assess the roof damages to their home in 2015. Plaintiffs argue that a breach of an insurer's implied good faith duty is sufficient to form the basis for a breach of insurance contract claim, even if no specific provision of the Policy is alleged to have been violated. The Court disagrees.

As explained above, Plaintiffs have not pointed to any provision in the Policy that obligates Defendant to investigate and assess damages to the Property. The Court agrees with Defendant that the Policy requires Defendant to indemnify Plaintiffs for sudden and accidental direct physical loss, but it does not require Defendant to inspect Plaintiffs' Property and find damage. Accordingly, the Court finds that Plaintiffs cannot show a deficiency in the performance of the Policy, and therefore, their breach of contract claim fails as a matter of law.

In Response to Defendant's Motion, Plaintiffs contend that Defendant violated an implied duty of good faith and fair dealing, relying on *Hall v. Liberty Ins. Corp.*, No. 3:13-CV-206-TAV-HBG, 2013 WL 6571928 (E.D. Tenn. Dec. 13, 2013). In *Hall*, plaintiff alleged that she permitted defendant to conduct an inspection on the roof of her home following a hailstorm. *Id.* at *7. The plaintiff did not make a claim for roof damage, and no repairs were ever made, but the defendant

9

counted the inspection as a third claim, triggering an increase in her insurance rates for the following year. *Id.* The plaintiff filed a lawsuit, claiming that defendant breached the covenant of good faith and fair dealing because defendant falsely assessed a third claim under the policy. *Id.* In a motion to dismiss, defendant argued that plaintiff had not pointed to a specific provision of the insurance contract that had been breach. *Id.* In denying this part of the defendant's motion, the court noted that the defendant did not argue that the implied obligation of good faith did not apply. *Id.* The defendant also argued that plaintiff could not assert a breach of contract claim while plaintiff was still insured under the policy for which she claimed was breach, but the court held that "such arguments [did] not overcome, at this junction of the proceedings, plaintiff's allegations that defendant violated the implied covenant of good faith and fair dealing in the Policy by erroneously charging higher rights." *Id.*

The Court finds *Hall* different than the present matter in several respects. First, in *Hall*, the court adjudicated the issue on a motion to dismiss, rather than a motion for summary judgment. Second, the allegations in *Hall* are completely different than the present case. Specifically, in *Hall*, plaintiff alleged that the defendant erroneously charged her higher rates for insurance. Plaintiffs in this case allege that Defendant had a duty to investigate and find property damage. Third, as the court in *Hall* noted, the defendant did not argue that the implied obligation of good faith did not apply.[2]

As mentioned above, Plaintiffs contend in the instant matter that Defendant breached the Policy, but they cannot point to a provision that Defendant breached. Instead, Plaintiffs argue that Defendant's failure to determine the true extent of the damages in 2015 constitutes a breach of the

---

[2] Plaintiffs also rely on *MFA Mut. Ins. co. Flint*, 574 S.W.2d 718 (Tenn. 1978), but in that case, the Tennessee Supreme Court specifically addressed the duty to deal with the insured fairly and in good faith when an insurer is settling a claim made by the insured.

implied good faith duty, but the implied covenant of good faith and fair dealing does not create rights and is not a stand-alone claim. *Ike v. Quantum Servicing Corp.*, No. 11-02914, 2012 WL 3727132, at *5 (W.D. Tenn. Aug. 27, 2012) ("The implied covenant does not, however, 'create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement.'") (quoting *Goot v. Metro. Gov't of Nashville & Davidson Cty.,* No. M200302013COAR3CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005)).

Plaintiffs also claim that Plaintiff Merriman personally paid for the roof damage in 2018. The undisputed facts establish, however, that Defendant paid the 2015 Claim and later issued a check to Plaintiff Merriman for the 2018 damage in the amount of $14,823.99—the amount that Ethos Restoration agreed to accept for the work. Accordingly, the Court finds Defendant's arguments well taken.

### B. Bad Faith Penalties

Plaintiffs seek bad faith penalties pursuant to Tennessee Code Annotated § 56-7-105 and under common law. To recover penalties under Tennessee's bad faith statute, a plaintiff must prove: (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Clark*, 2016 WL 8738239, at *6.

The parties disagree as to whether a bad faith common law claim exists in light of the above statute. *Compare For Senior Help, LLC v. Westchester Fire Ins. Co.,* No. 3:19-CV-00126, 2021 WL 243220, at *10 (M.D. Tenn. Jan. 25, 2021) (explaining that it is not "strictly true" that Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured) with *Westfield Ins. Co. v. RLP Partners, LLC,* No. 3:13-00106, 2013 WL 2383608, at *3

(M.D. Tenn. May 30, 2013) ("Common law causes of action against an insurer (such as breach of contract) may exist, but bad faith is not among them.").

The Court, however, does not need to address this issue because the undersigned does not find bad faith here for similar reasons as above. *See generally Clark*, 2016 WL 8738239, at *6 ("A plaintiff cannot succeed on a bad faith refusal-to-pay claim if the plaintiff cannot succeed on the underlying breach of contract claim for refusal to pay.") (citing *Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004)) ("[T]he policy of insurance must, by its terms, have become due and payable."); *see also Patterson v. Shelter Mut. Ins. Co.,* No. M2014-01675-COA-R9-CV, 2015 WL 5320231, at *7 (Tenn. Ct. App. Sept. 11, 2015) ("[T]o recover for both breach of contract and bad faith under Tenn. Code Ann. § 56-7-105, Plaintiffs must show, *inter alia*, that their homeowner's policy required [defendant] to pay for the damage they sustained."), *appeal denied* (Tenn. Jan. 20, 2016).

Plaintiffs rely on *Klink v. Grange Ins.*, No 1:12-cv-159, 2014 WL 11532237, at *6 (E.D. Tenn. July 30, 2014) in support of their argument. In *Klink*, the defendant requested that the court dismiss the bad faith claim, arguing in part, that its refusal to pay was made in good faith. *Id.* at *5. Specifically, the plaintiffs made a claim under their insurance policy when a corner of their residence collapsed, but the defendant denied the claim on the grounds that the policy did not cover the loss, citing to its experts' investigation as to the cause of the collapse *Id.* at *1. The defendant argued that the bad faith claim should be dismissed because it reasonably relied on its experts' investigation. *Id.* at *6. The court found genuine issues of material fact existed because one of the plaintiffs sent defendant a letter detailing the deficiencies with the experts' investigation. *Id.* The court noted that the letter placed defendant on notice that its experts had failed to conduct an appropriate investigation. *Id.*

The Court finds that the instant matter is different than *Klink* because, here, Defendant did not refuse to pay. Instead, Defendant paid Plaintiff Merriman's claims. The undisputed facts show that Defendant paid the 2015 Claim. In addition, with respect to the 2018 Claim, on November 14, 2018, Defendant issued a check to Plaintiff Merriman, amounting to $14,823.99, which constituted $12,977.14 for the total repair amount and $1,846.85 for the mold. Accordingly, the Court finds Defendant's arguments well taken.

### C.     Tennessee Consumer Protection Act

Plaintiffs' claim under the TCPA also stems from their allegation that Defendant acted unfairly and in bad faith in handling the 2015 Claim. Plaintiffs argue that Defendant did nothing to actually determine the true damages in 2015 and that as a result, additional damage occurred to the Property and Plaintiffs suffered health problems. Defendant argues that Tennessee does not recognize a claim for violating the TCPA when the claim is connected to a contract of insurance.

Tennessee Code Annotated § 56-8-113, in relevant part, states as follows: "Notwithstanding any other law, title 50 and this title shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance." The TCPA falls under Title 48, and therefore, is not a viable cause of action. *See Thomas v. Allstate Ins. Co.*, No. 2:20-CV-02477, 2021 WL 829717, at *4 (W.D. Tenn. Mar. 4, 2021) ("This Court has interpreted this section to "effectively eliminate[ ] the TCPA as a viable cause of action for disputes arising from the insurer-insured relationship because the TCPA is not contained in Title 50 or Title 56.") (other quotations omitted); *Brown v. Genworth Life & Annuity Ins. Co.,* No. 3:18-CV-506, 2020 WL 7646413, at *13 (E.D. Tenn. Aug. 28, 2020) ("The TCPA is found in title 47, and thus cannot be used for

actions arising from insurance agreements. Because Plaintiff's TCPA claim arises from an insurance agreement, it fails as a matter of law and will be dismissed."). Accordingly, the Court finds that Plaintiffs' TCPA claim fails as a matter of law.

V. **CONCLUSION**

Accordingly, for the reasons explained above, the Court finds Defendant's Motion for Summary Judgment [**Doc. 26**] well taken, and it will be **GRANTED**. A separate judgment will be entered **DISMISSING** this case.

                                  ORDER ACCORDINGLY.

                              /s/ Bruce Guyton
                              United States Magistrate Judge